## 59836. ARTHUR v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was indicted in five counts for failing to pay for agricultural products (a felony) with reference to five separate sales of farm animals from September 10, 1976, to October 15, 1976. He was tried and convicted on all counts on November 27, 1979, and sentenced to serve a term of two years on each count to be served consecutively. Defendant appeals. *Held:*

1. The first contention of defendant is that there was insufficient evidence to support a verdict of guilty in that the State failed to prove venue as being in Calhoun County, Georgia. However, the very first witness against the defendant testified that she was the bookkeeper of Citizens Stock Yard, located in Arlington, Calhoun County, Georgia, and that the business, a corporation, did considerable business with the defendant on a cash basis in which the defendant purchased farm animals, including the sales here involved, and that no credit was extended to him. She also testified that as was the custom she drew drafts on him for the payment of the animals purchased by him, all of which were not honored. "Evidence as to venue, though slight, is sufficient where there is no conflicting evidence." *Well v. State,* 210 Ga. 422, 423 (2) (80 SE2d 153). There is no merit in this complaint.

2. With reference to the method of doing business, in each sale instance the stockyard issued a customer's draft upon the defendant on a certain bank, and same were not paid except in the instance of the first draft of 9/17/76, in which a considerable portion of same was paid, the bank stating that the difference would be remitted later. The other drafts were not paid at all. No other payment was ever received by the stockyard. Later a note was given with security interest in a pecan crop located on certain property. A judgment was also received against the defendant, and the pecan crop was levied upon pursuant to that judgment. However, whether a sale of agricultural products is for cash or credit is for the jury to determine from the intention of the parties as shown by the agreement,

understanding or circumstances connected with the transaction. See *Wilson v. State,* 215 Ga. 775, 776 (2) (113 SE2d 607); *Marshall v. State,* 127 Ga. App. 805 (2) (195 SE2d 469).

The defendant's contention is that the sales were credit transactions and not cash transactions; that is, he was allowed three or four days at the time of the drafts to pay or arrange for the drafts to be paid. The defendant himself admitted on cross examination that he had not paid for the farm animals he had purchased except as to the first draft which was partially paid but that he had no intention to defraud in that the "drafts went back on me that I drawed on folks, checks" and he simply did not have the money to pay for the farm animals.

Code Ann. § 5-9914 (Ga. L. 1959, pp. 143, 144) clearly states that when any person fails or refuses to pay for agricultural products therein listed "or shall make way with or dispose of the same before he shall have paid therefor unless credit shall be expressly extended therefor, shall be guilty of a felony and upon conviction thereof, shall be imprisoned in the penitentiary for not less than one year nor more than five years." The court in its charge instructed the jury that a necessary element in this case was the intent to defraud and that the question of intent in criminal cases is one entirely for the jury and that the criminal intent must, from all the facts and circumstances in the case, be proven beyond a reasonable doubt or else there could be no conviction. The defendant admitted the purchases of the agricultural products, albeit he contends they were made on credit for a limited period, while the State's witnesses testified that the sales were strictly for cash, employing the sight draft method of payment which were not honored in their entirety. Based upon the foregoing evidence, and after a review of the entire transcript and record we find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of guilt of the defendant beyond a reasonable doubt. *Dukes v. State,* 151 Ga. App. 312, 313 (259 SE2d 706); *Boyd v. State,* 244 Ga. 130, 132 (5) (259 SE2d 71); *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916). The evidence was sufficient to support the verdict of guilty as to all five counts charged. *Plapinger v. State,* 217 Ga. 11, 13 (120 SE2d 609); *Garmon v. State,* 219 Ga. 575, 578 (3) (134 SE2d 796); *Mallette v. State,* 119 Ga. App. 24, 25-27 (165 SE2d 870).

3. In discussing the charges against the defendant relative to the purchases of livestock, the court instructed the jury that the charge against defendant was that the stockyard, a corporation, "did not expressly extend credit for the purchase of said cattle and hogs to the defendant," hence the issue was whether this was "a credit sale."

He further instructed the jury that this issue must be proven beyond a reasonable doubt, "that no credit was expressly extended" for the purchase of said livestock.

Defendant contends that the trial court erred in giving this charge since the jury still would have been required to find that no former payment had been made. The court fully charged as to all the necessary elements of the crime of failure to pay for agricultural products. Clearly from the charge the jury would have concluded that the jury must find a failure to pay, the sale was a non-credit transaction, and there was criminal intent to defraud the seller. The State's witnesses testified that the agricultural products sold were cash sales and not credit sales. The defendant contended he was given credit although he also contended that he had paid for the goods, albeit at a later time by the fact that a judgment had been obtained against him and that he had given the stockyard a security interest in a pecan crop. The trial court did not err in charging the jury as shown above.

4. Defendant contends there was no showing of a knowing and intelligent waiver of his right to counsel and that same is required by the Sixth and Fourteenth Amendments to the Constitution of the United States, citing *Campbell v. State*, 128 Ga. App. 74, 75-78 (1) (195 SE2d 664) and Von Moltke v. Gillies, 332 U. S. 708, 723 (68 SC 316, 92 LE 309). He contends the record shows no indication of a knowing and intelligent waiver inasmuch as the trial record shows that the defendant represented himself. Accordingly, a hearing was held on April 2, 1980, after the trial, to perfect the record with reference to whether or not the court had offered the defendant the appointment of an attorney to represent him. At this hearing the defendant, who at this point in time had retained counsel, and one other witness (defendant's daughter) contended that the trial court never offered him the right to have counsel and that he was forced to try the case himself.

It was here shown that on the day of the trial the defendant did have limited counsel for the sole purpose of obtaining a continuance, the case having at that time been pending for several years. The limited counsel testified that he had been paid a retainer to represent the defendant only on condition that he could get a continuance as he was involved in very serious litigation at that particular time. Whereupon the court entered a statement that he had, at the continuance hearing, instructed from the bench that the defendant would have to employ an attorney "or we would appoint him one and that we would postpone the trial" until the next day in order that he could accomplish the hiring of an attorney, but the defendant "emphatically advised that he preferred to represent

himself, that he was familiar with all the facts of the case, and could present his defense satisfactorily." Both the sheriff, who was in attendance of the court at that time, and the limited counsel who had been retained to request a continuance testified that the court instructed the defendant that he had to employ an attorney or that the court would appoint him an attorney. The limited counsel testified in responding "yes" as to the above and added that the court also instructed "or that he [defendant] would have to try it himself." The sheriff as a witness testified that the court offered to appoint him an attorney but that the defendant "didn't say anything, to the best of my knowledge." We find no harmful error in the fact that the defendant elected to try the case himself and further we find he intelligently and knowingly waived his right to counsel by not accepting the offer of the court. Moreover, there is no showing defendant maintained that he was indigent or requested the trial court to make a determination of indigency or to appoint him an attorney. There is no merit in this complaint.

*Judgment affirmed. Smith and Banke, JJ., concur.*

SUBMITTED MAY 7, 1980 — DECIDED MAY 27, 1980 —

*George F. Peterman, III,* for appellant.

*Benjamin L. Bateman, District Attorney, Bentley C. Adams, III, Assistant District Attorney, Peter Zack Geer,* for appellee.