## A89A0226. PERRY v. THE STATE.

(382 SE2d 402)

DEEN, Presiding Judge.

Lonnie Perry was convicted of two counts of rape and one count of incest.

The evidence showed that Perry was an abusive father and husband who terrorized his family through physical violence, false accusations, and psychological intimidation. One evening he called his common-law wife into their bedroom and falsely accused her of giving drugs to their sixteen-year-old daughter. He claimed that he found a zip-lock bag and some cotton in the daughter's bedroom. He demanded that she strip and examined each item of clothing as she removed it. He then searched her body for signs of drug use and threatened to hit her on the side of her head with a beer bottle. While she was still naked, he called the daughter into the room and demanded that she "get like her mother." When she finished undressing, he examined her clothing and ordered her and her mother to lie on their stomachs on the bed. He then proceeded to have sexual relations with the mother. He then got up, saying he "had sex with number one then he was going to have sex with number two." He started pulling on the girl's leg, and the mother protested. He began slapping and choking his wife and ordered her to fix him something to eat. She complied because she believed that he would settle down and not harm the children.

While Mrs. Perry was preparing dinner, appellant went to the daughter's room, demanded that she remove all the clothing that she had just put on, told her to lie down on the bed, and had sexual relations with her. When she cried, he told her to shut up. He left and told his wife to clean up the kitchen. He then returned to his daughter's room and raped her again.

Testimony also showed that, while appellant had never had sexual relations with his daughter before, he had attempted to do so the previous Saturday. Approximately five days before the rapes, he accused her of drugging his drink and beat her with an electrical cord. There was also testimony that he beat the mother several times a week, that he locked the children in the apartment when they were not in school, and that he kept the only key to the double-cylinder deadbolt lock. He also accompanied his wife to and from work and constantly accused her of having affairs with other men.

The day after the rape, the mother managed to escape in the family automobile and took the children to the home of a friend. The daughter told her mother what her father had done the previous evening, when they were in the automobile. The incident was reported to the police at the friend's insistence. The mother testified that she did not consent to having sexual relations with appellant in the presence

of their daughter.

1. Prior to trial, counsel filed a motion in limine to prevent the prosecution from eliciting testimony as to his client's drug use. At trial, the mother and daughter during the course of their testimony referred to his drug use. Counsel objected each time and moved for a mistrial. The first time, the wife testified, in response to a question as to whether she was afraid of him, that "he would be all right up until a point till he started to do his drugs." Upon objection, the court held a hearing outside the presence of the jury, and the witness revealed that she was afraid of the accused because he often beat her and falsely accused her. The court instructed the jury to disregard the witness' statement about drugs prior to the objection. Other statements made by the witness consisted of obscure references to appellant's drug use and mentioned his discovery of a piece of cotton and a zip-lock bag, whereupon he accused them of drug use, and the wife testified that she informed him that he had to have brought these items into the house. The daughter also testified as to her mother's arrival on the evening that they fled their apartment and said that her mother "left him over there at the drug house."

All of these references to appellant's drug use were a part of rambling narratives as to the reasons appellant's acts of violence occurred. The court gave curative instructions after the first one, and after the daughter's testimony that her mother had left him at a drug house and escaped in the family automobile.

"[W]hen a witness gives a non-responsive answer to a question impacting negatively on the defendant's character, this does not place the defendant's character in issue under OCGA § 24-9-20 (b). [Cit.]." *Jones v. State*, 257 Ga. 753, 759 (363 SE2d 529) (1988). Evidence is admissible which logically tends to prove material facts at issue and which constitute acts and circumstances which serve to elucidate or throw light upon material issues, even where the defendant's character is incidentally placed in issue. *Burney v. State*, 252 Ga. 25, 26 (310 SE2d 899) (1984). The testimony in this case which referred to appellant's drug use falls squarely within the above-cited rules.

2. During closing arguments, the prosecutor stated: "That man . . . is as much a terrorist as those terrorists in the Middle East who kidnap people and hold them hostage. . . . He isn't going away until you find him guilty. Juries in this country are our last stronghold that we have that keep our society from being . . . make the difference between us being an orderly society or from us being in chaos." Appellant objected and moved for a mistrial. The court denied the motion.

The prosecutor "may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard."

*Terhune v. State,* 117 Ga. App. 59, 60 (159 SE2d 291) (1967). The prosecutor's reference to appellant as a terrorist is not an unreasonable deduction from the evidence that was presented at trial. " 'What the law forbids is the introduction into a case by way of argument of facts which are not in the record and are calculated to prejudice a party and render the trial unfair. The language used in argument may be extravagant; but figurative speech is a legitimate weapon in forensic warfare if there are facts admissible in evidence upon which it may be founded.' [Cit.] If the challenged remark is not such as would be likely to prejudice the defendant's right to a fair trial, such will not constitute reversible error. [Cit.]" *Davis v. State,* 178 Ga. App. 357, 359 (343 SE2d 140) (1986). The use of the word "terrorist" is seemingly less, or no more inflammatory than equating man with a mad dog, an animal or brutes and beasts of the barnyard. *Shelton v. State,* 146 Ga. App. 763, 766 (247 SE2d 580) (1978). We find no error in the trial court's failure to rebuke the prosecutor or give curative instructions to the jury.

3. Venue was proved as to those counts pertaining to appellant's assault upon his daughter. The mother testified that the family lived at a certain address in Fulton County when the offenses occurred. The evidence showed that all the acts for which appellant was tried were committed at that location. " 'Evidence as to venue, though slight, is sufficient where there is no conflicting evidence.' [Cit.]" *Arthur v. State,* 154 Ga. App. 735 (269 SE2d 887) (1980).

*Judgment affirmed. Birdsong, J., concurs. Benham, J., concurs in the judgment only.*

DECIDED MAY 17, 1989.

*Jerry Boykin,* for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Charles W. Smegal, Joseph J. Drolet, Assistant District Attorneys,* for appellee.