After being injured at work, Patricia Gipson consulted Dr. Henry Younes, an osteopath, for pain management. Dr. Younes performed a cervical block on Mrs. Gipson; it resulted in a permanent spinal cord injury and partial paralysis. Mrs. Gipson sued Dr. Younes, alleging medical malpractice; her husband, Frederick Gipson, also sued, alleging a loss of consortium.
A jury returned a general verdict in favor of Dr. Younes, and the trial court entered a judgment on the verdict. The Gipsons appealed to the Alabama Supreme Court. The supreme court transferred the cause to this court, pursuant to Ala. Code 1975, § 12-2-7(6). The Gipsons raise two evidentiary issues on appeal. *Page 531 
 I.
The Gipsons first argue that admission of the workers' compensation complaint Mrs. Gipson had filed against her employer violated the collateral-source rule. They cite numerous authorities from other jurisdictions, state and federal, holding that the admission of such evidence constitutes reversible error in a medical malpractice case.
The rule in Alabama, however, is that when the jury returns a general verdict for the defendant in a malpractice case, the judgment cannot be reversed based on any alleged error in admitting evidence that would violate the collateral-source rule. Acklin v. Bramm, 374 So.2d 1348 (Ala. 1979). "It is clear in Alabama that, where there is a general verdict absolving the defendant from liability, reversal cannot be based upon the action of a trial court in rejecting or admitting evidence that goes merely to the extent of injury and damages." Id. at 1349.
 II.
The Gipsons next argue that the court erred by granting Dr. Younes's motion in limine to exclude evidence indicating that he had twice failed the medical board certification exams for the medical specialties of anesthesiology and pain management. The trial court explained its ruling as follows:
 "My ruling is that you will not be able to bring out that he failed the test, but you will be able to elicit from him, if you stay closely in line with what I am about to say, that he is not a Board certified anesthesiologist. I am afraid the word `failure,' the prejudicial value far outweighs the probative value. I'm afraid the jury could try the whole case based on the word `failure'; they could connote the word `failure' with negligence."
The Gipsons were allowed to elicit the following information from Dr. Younes:
 "Q. [By counsel for the Gipsonsl Would you tell the ladies and gentlemen of the jury what Board certification is?
 "A. [BY Dr. Younes] Board certification is a classification of a practitioner in a specialty in medicine who serves as a consultant in that specialty.
"Q. What is the American Board of Anesthesiology?
 "A. [The] American Board of Anesthesiology is . . . a body which gives an examination and provides the public with consultants in that specialty.
 "Q. . . . [I]t is a national organization, is it not?
"A. I believe so.
 "Q. And in order to be Board certified, do you have to pass a national exam?
"A. Yes.
 "Q. Is there a Board certification . . . process . . . in the specialty of anesthesiology?
"A. Yes.
 "Q. . . . [I]f you pass that, you become a member of the American Board of Anesthesiology?
"A. Yes, sir.
 "Q. Are you Board certified in anesthesiology, Dr. Younes?
"A. No.
 "Q. Are you a member of the American Board of Anesthesiology?
"A. No.
 "Q. Are you a member of the American Academy of Anesthesiology?
"A. No.
 "Q. In addition to Board certification in anesthesiology, there is a Board certification in pain management, is there not?
"A. It is a subcertification of that specialty.
"Q. Are you Board certified in pain management?
"A. No.
 "Q. Again, in order to be Board certified in pain management, would you have to pass a national exam?
"A. Yes."
Although Alabama appellate courts have not been presented with the issue, the courts of other jurisdictions have uniformly held that a physician's inability to pass a medical board certification exam has little, if any, relevance to the issue of whether the physician *Page 532 
complied with the standard of care required in his or her treatment of a patient. See, e.g., Williams v. Memorial Medical Center, Inc.,218 Ga. App. 107, 108, 460 S.E.2d 558, 560 (1995). Accord Campbellv. Vinjamuri, 19 F.3d 1274, 1276 (8th Cir. 1994); Douglas v.University Hosp., 150 F.R.D. 165, 170 (E.D. Mo. 1993), aff'd, 34 F.3d 1070 (8th Cir. 1994). In other words, the physician's failing the test is irrelevant to the issue of his negligence in a malpractice case. Id. See also George Blum, Annotation, Proprietyof questioning expert witness regarding specific incidents orallegations of expert's unprofessional conduct or professionalnegligence, 11 A.L.R. 5th 1, § 8 (1993). However, when a physician sued for malpractice testifies as an expert, the fact that he has failed a board certification exam is relevant to his credibility as an expert. See, e.g., McCray v. Shams, 224 Ill. App.3d 999,1000, 587 N.E.2d 66, 67, 167 Ill. Dec. 184, 185, app. denied, 145 Ill.2d 635, 596 N.E.2d 630, 173 Ill. Dec. 6 (1992);Ward v. Epting, 290 S.C. 547, 554, 351 S.E.2d 867, 871 (1986).
Dr. Younes does not dispute the Gipsons' contention that he testified as an expert, and the record supports that view of his testimony. Dr. Younes testified extensively about his education, training, and experience in the treatment of "complex chronic pain." He stated that he had been a faculty member at the University of Alabama in Birmingham Medical Center, and he listed his publications in various medical journals and textbooks. He outlined his diagnosis and treatment of Mrs. Gipson and he explained why he chose certain treatment procedures over others. Dr. Younes testified that, in treating Mrs. Gipson, he complied with the applicable standard of care. He gave his opinion that Mrs. Gipson's spinal cord injury was not the result of a lack of due care on his part.
In Ayres v. Lakeshore Community Hosp., 689 So.2d 39, 41 (Ala. 1997), our supreme court stated the following rule pertaining to cross-examination of an expert witness:
 "[A]n expert witness may generally be cross-examined as to his or her credentials. See C. Gamble, McElroy's Alabama Evidence
§ 142.01(5) (5th ed. 1996). However the trial judge has substantial discretion as to the questions a party is allowed to ask of an expert witness. The scope and extent of cross-examination is vested in the trial court's sound discretion, and this court will not reverse on the basis of the trial court's rulings regarding cross-examination unless an abuse of discretion has occurred. See General Electric Co. v. Mack, 375 So.2d 452 (Ala. 1979)."
The trial court's exclusion of evidence indicating that Dr. Younes had failed his medical board exams was based on Rule 403, Ala. R. Evid. That rule states:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered "if its probative value is substantially outweighed by the danger of unfair prejudice." The Gipsons argue that the evidence was highly probative because, without it, the jury was left with the erroneous impression that Dr. Younes had impeccable credentials and proven expertise in two medical specialties for which he had, in fact, failed to achieve board certification. Based on the explanation for its ruling, the trial court thought the evidence was unfairly prejudicial because the jury might use it not only to assess the doctor's credibility as an expert, but also to resolve the issue of his negligence. Rule 403 implicitly recognizes that some evidence is so unfairly prejudicial that a jury cannot be expected to disregard it or to use it for only certain purposes. Prejudice is "unfair" if the evidence has "an undue tendency to suggest decision on an improper basis." Fed.R. Evid.403 (Advisory Committee Notes 1972).
The trial court evidently believed that the proposed evidence had an undue tendency to influence a decision on the issue of Dr. Younes's negligence, and we cannot say that the court abused its discretion in ruling the way it did. See Douglas v. UniversityHospital, 150 F.R.D. at 170 ("[w]hether [the physician] is board certified and whether he *Page 533 
took more than one time to pass the board certification test are not relevant to [whether he was negligent], and any possible relevance is substantially outweighed by the potential prejudice").
We have reviewed a number of decisions from other jurisdictions in which the courts have been required to determine whether a physician who testifies as an expert witness may be cross-examined about his failure to pass a board certification exam. The decisions are virtually unanimous in upholding the trial court's Rule 403 determination-regardless of whether the determination resulted in admission or in exclusion of the evidence.
 "[W]hen reviewing a Rule 403 determination, [an appellate court's] task is not to reweigh the prejudicial and probative elements of the evidence, but rather to determine if the [trial court] clearly abused its discretion in [excluding] the evidence. Duncan v. Wells, 23 F.3d 1322, 1323-24
(8th Cir. 1994); see United States v. Long, 574 F.2d 761, 767 (3d Cir.) (`If judicial selfrestraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.'), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). See also United States v. Vetter, 895 F.2d 456, 459-60 (8th Cir. 1990) (per curiam)."
Williams v. Nebraska State Penitentiary, 57 F.3d 667, 670
(8th Cir. 1995).
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and MONROE, JJ., concur in part and dissent in part.